**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **ROBERT JACKSON, on his own**<br>**behalf and others similarly situated,** | : | |
| | : | |
| **Plaintiff,** | : | **Civil Action File No.** |
| | : | **1:16-cv-01692-SCJ** |
| **v.** | : | |
| | : | |
| **EURAMEX MANAGEMENT**<br>**GROUP, LLC,** | : | |
| | : | |
| **Defendant.** | : | |
| _____ | : | |

**DEFENDANT EURAMEX MANAGEMENT GROUP, LLC'S PARTIAL**
**MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S**
**RETALIATION CLAIM AND MEMORANDUM OF LAW IN SUPPORT**

Pursuant to Federal Rule of Civil Procedure 56 and Local Rules 7.1, 7.2 and 56.1 for the United States District Court, Northern District of Georgia, Defendant Euramex Management Group, LLC ("Euramex" or "Defendant") respectfully moves this court for partial summary judgment with respect to Plaintiff Robert Jackson's ("Plaintiff's" or "Jackson's") retaliation claim ("Count II"). Summary judgment is appropriate because the undisputed facts established during discovery demonstrate that there are no genuine issues of material fact on Plaintiff's claim of retaliation.

## I.   __INTRODUCTION__

Plaintiff's Complaint includes two counts.  In Count I, Plaintiff alleges that Euramex failed to pay him overtime under § 207 of the Fair Labor Standards Act ("FLSA") for all of his hours worked.  *See* Doc. No. 1.  During discovery, Plaintiff has clarified that his claim is that Euramex management did not approve hours he worked in excess of eight per day and therefore was not paid overtime for all of his hours of work.  While Euramex denies this allegation, there is little doubt that there are disputed issues of material fact precluding summary judgment for either party. In Count II, Plaintiff alleges that Euramex retaliated against him by terminating his employment in response to Plaintiff "inquiring why he was not being paid his overtime wages." *Id.*

Plaintiff's retaliation claim is not supported by sufficient evidence to create a jury issue and fails as a matter of law for three reasons.  First, discovery in this case demonstrates that Plaintiff did not in fact engage in a "protected activity" under the FLSA.  For this reason, Plaintiff cannot establish a *prima facie* claim of retaliation.  Second, the record evidence demonstrates there was not a sufficient causal connection between any "inquiries" about Plaintiff's pay and his termination.  Indeed, Plaintiff concedes that any complaints he made about his hours of work were not the "but for" cause for his termination.  For this reason as well, Plaintiff cannot establish a *prima facie* claim of retaliation.  Third, even if

Plaintiff could establish a *prima facie* claim of retaliation, he cannot demonstrate that Euramex's reasons for terminating his employment are pretext for retaliation. For this reason as well, Plaintiff's retaliation claim should be dismissed.

## II.   EURAMEX IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S RETALIATION CLAIM

### A. Summary Judgment Standard of Review.

Summary judgment "is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. Rule 1).  Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  When a plaintiff fails to establish a genuine issue of material fact on an essential element, summary judgment is appropriate.  *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993).

### B. Burden of Proof

Plaintiff does not allege that there is any direct evidence of retaliatory motive based upon his alleged "protected activity."  When there is no direct evidence of retaliatory motive, circumstantial evidence is evaluated under the

burden-shifting framework articulated in the United States Supreme Court's decision in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *See Raspanti v. Four Amigos Travel, Inc.*, 266 Fed. Appx. 820, 822 (11th Cir. 2008) (applying *McDonnell Douglas* framework to FLSA retaliation case); *Crabtree v. Volkert, Inc.*, 2012 U.S. Dist. LEXIS 173792 (S.D. Ala. Dec. 7, 2012)[1] ("The legal standard by which claims of FLSA retaliation are evaluated on summary judgment is substantively identical to that employed in the Title VII retaliation context.") Under the *McDonnell Douglas* framework, the plaintiff must first establish the elements of the *prima facie* case of retaliation. Once the plaintiff does so, the employer has the burden to produce a lawful basis for the employment action. The plaintiff must then produce evidence to show that the employer's proffered basis is pretextual. If the plaintiff cannot, the defendant is entitled to summary judgment. *See Wigfall v. St. Leo Univ., Inc*., 517 Fed. Appx. 910 (11th Cir. 2013) (applying burden shifting framework to FLSA retaliation case).

### C. Jackson Cannot Establish That Euramex Terminated His Employment in Retaliation For Complaining About Failure to Pay Overtime.

It is unlawful for an employer to "discharge . . . any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding" under the FLSA. 29 U.S.C. § 215(a)(3). A *prima facie* case of

---

[1] All unpublished decisions cited herein are attached as Exhibit 1.

retaliation under the FLSA requires a plaintiff to demonstrate that (1) he engaged in activity protected under the FLSA, (2) he subsequently suffered an adverse action by defendant, and (3) a causal connection existed between his activity and the adverse action. *See Gowski v. Peake*, 682 F.3d 1299, 1311 (11th Cir. 2012); *Wolf v. Coca-Cola Co.*, 200 F.3d 1337, 1342-43 (11th Cir. 2000). A plaintiff must prove that the defendant would not have taken the adverse action "but for" his assertion of FLSA rights. *Id.* at 1343; *Reich v. Davis*, 50 F.3d 962, 965 (11th Cir. 1995). Under this test, an employer is liable for retaliation only if the employee suffered an adverse job action after engaging in protected activity that he or she would otherwise not have suffered. *See id.*

In this case, there is no dispute that Plaintiff "suffered an adverse action by defendant" as Defendant terminated Plaintiff's employment. However, the undisputed facts establish that Plaintiff never engaged in an activity protected by the FLSA, and that there is not a sufficient causal connection between any relevant complaint(s) he made and Defendant's decision to terminate his employment. For these reasons, Plaintiff cannot establish a *prima facie* case of FLSA retaliation and summary judgment is warranted on Plaintiff's retaliation claim.

### a. Plaintiff Never Engaged in An Activity Protected By The FLSA.

The only "complaints" that Plaintiff made to Euramex during his employment were:

- Plaintiff complained to Ashley Riddley, Defendant's Community Manager that he was being required to work more than eight hours per day without extra compensation. *See* Statement of Undisputed Material Facts ("SOF"), ¶¶ 68-69, 71.

- Plaintiff complained to Thao Nguyen, Defendant's Human Resources Director, that he wanted an additional raise beyond the $16/hour he was earning. *Id.* at ¶ 73.

- Plaintiff complained to Nguyen that Riddley was sending him home on Thursday or Friday afternoon and that as a result, he would not earn overtime during those weeks. *Id.* at ¶¶ 76-77.

Plaintiff's written discovery responses confirm the limited scope of Plaintiff's complaints. In Defendant's Interrogatory No. 6, Defendant asked Plaintiff to:

> Describe all complaints, if any, made by you to Euramex regarding hours that you contend you worked and did not receive compensation. State specifically the individual(s) to whom you complained, whether the complaint was oral or in writing, the date of the complaint, the substance of the complaint, and the response, if any, that you received to the complaint.

*See* SOF, ¶ 81. Plaintiff responded "Plaintiff initially complained to his immediate supervisor, Edward McKay, who advised Plaintiff that he had no control over how Plaintiff was paid and, that Plaintiff should talk to Ashley Riddley. Therefore, Plaintiff made all of his complaints regarding his pay, or lack thereof, verbally, to Ms. Riddley." *Id.* Plaintiff's response to Interrogatory No. 6 did not identify any specific complaint.

Likewise, in Defendant's Interrogatory No. 7, Defendant asked Plaintiff to

"[d]escribe all inquiries, if any, made by you to Euramex regarding why you were "not being paid your overtime wages." *Id.* at ¶ 82.  In response, Plaintiff stated that "Ms. Riddley would review the time Plaintiff entered on the computer and would advise Plaintiff he had 'too many hours' and that his overtime hours were 'unapproved.'  She would then instruct Plaintiff to correct his hours in one" of two ways." *Id.*  Once again, Plaintiff failed to allege that he ever complained to Euramex about the company's failure to pay overtime for hours worked over 40 per week.

In Request for Production No. 8, Defendant requested from Plaintiff all documents, ESI or communications evidencing or reflecting any complaint or communications between Plaintiff and Defendant or any agent of Defendant in which Plaintiff claimed that Defendant failed to pay him for any work time. *See* SOF, ¶ 83. Plaintiff responded "None in Plaintiff's possession." *Id.*

Plaintiff's testimony and discovery responses confirm that Plaintiff never complained to Euramex about any failure to pay for overtime hours worked (i.e. hours worked over 40 per week).  Indeed, in response to Plaintiff's complaint to Riddley that Euramex was not paying him overtime for his hours worked over eight per day, Riddley told Jackson that overtime accumulates after 40 hours per week rather than eight per day.  *See* SOF, ¶ 70.  With that information, Jackson concedes that he "left [this issue] alone." *Id.* at ¶ 72.

Plaintiff never complained to Defendant about any failure to pay for overtime hours worked despite the fact that Jackson acknowledged receipt of and signed for Euramex's January 1, 2015 Handbook which contains an Open Door Policy and Problem Solving Process. *See* SOF, ¶¶ 6-7. That policy provides that employees are encouraged to voice any concerns to their immediate supervisor, Department/ Regional Manager, Human Resources or the Vice President or President of the department. *Id.* at ¶ 8. Jackson knew who his contact was in Human Resources during his employment, but never complained to Human Resources about any failure to pay for overtime hours worked during his employment. *Id.* at ¶¶ 19-20.

Plaintiff failed to avail himself of these complaint opportunities despite knowing that any request to work overtime off the clock was expressly against Euramex's policies. Jackson received for and signed for Euramex's Policies and Procedures for Time Clock Use for Non-Exempt Employees. *Id.* at ¶ 9. Those policies and procedures require non-exempt employees to clock in for all hours worked and that falsely reporting hours will be subject to corrective action up to and including termination. *Id.* at ¶¶ 10-11. Jackson admits that he understood this policy during his employment, and that any instruction from Riddley to the contrary was against company policy. *Id.* at ¶¶ 12-13. Jackson also admits that he always had access to the time clocks where he could report his hours of work. *Id.*

at ¶ 16.  Furthermore, Jackson told Nguyen that he took pride in making sure his hours were reported correctly and that he clocks in when he comes to work and clocks out when he leaves work.  *Id.* at ¶ 14.  Jackson took advantage of these policies to make sure his hours of work were accurately reported when the time clock was not working or when he simply forgot to clock out.  *Id.* at ¶¶ 17-18.  In such circumstances, he logged his hours on his phone and showed the hours to Riddley or McKay, who logged his correct hours of work.  *Id.*  Despite these policies and Jackson's awareness of how to report when his hours were not correct, Jackson never reported to Euramex that Riddley instructed him not to report his overtime hours.  *Id.*

None of the complaints Plaintiff made constitute "protected activity" under the FLSA.  Plaintiff's complaint that he wanted to earn a higher hourly rate is clearly not a "protected activity" under the FLSA because Plaintiff was not complaining about minimum wage or overtime at all.  *See, e.g. Hassinger v. Sun Way Enters.*, 2014 U.S. Dist. LEXIS 73325, *45, n.22 (M.D. Fla. May 29, 2014) (stating that a "protected activity" under the FLSA "requires in part that Plaintiff had an objectively reasonable, good faith belief that Defendants had violated the FLSA's minimum wage or overtime provisions.") (citing *Perez v. Brands Mart Serv. Corp.*, 2011 U.S. Dist. LEXIS 82708, *10 (S.D. Fla. July 28, 2011).) Plaintiff was simply complaining about his hourly rate, which was already well

above minimum wage.  Clearly, paying an employee $16.00/hour rather than a higher hourly rate is not a violation of the FLSA.

Plaintiff's complaint that Euramex was not paying Plaintiff overtime for hours worked over eight per day likewise is not a "protected activity" under the FLSA because the FLSA does not require employers to pay overtime for hours worked in excess of eight hours per day.  The FLSA only requires employers to pay for overtime for hours worked in excess of 40 per week.  Because the issue about which Jackson complained was not unlawful under the FLSA, it was not a "protected activity."

The Supreme Court has held that in order to constitute a protected activity, a complaint must be "sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the [FLSA] and a call for their protection."  *Kasten v. Saint-Gobain Performance Plastics Corp.*, 131 S.Ct. 1325, 1335 (2011).  The Eleventh Circuit has held that where an employer's conduct is lawful, a plaintiff's belief that his employer engaged in an unlawful employment practice is not objectively reasonable, and if the belief is not objectively reasonable, the plaintiff's complaint does not qualify as a "protected activity."  *Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1388 (11th Cir.1998); *Garcia v. Nachon Enters.*, 2016 U.S. Dist. LEXIS 162540, *31-33 (S.D. Fla. Nov. 23, 2016); *Burnette v. Northside Hosp.*,

10

342 F. Supp. 2d 1128, 1135 (N.D. Ga. 2004) (finding plaintiff's belief that employer violated FLSA objectively unreasonable in light of Eleventh Circuit case law and the law of other circuits establishing that employer's conduct was lawful). Therefore, because not paying overtime for hours worked over eight per day is perfectly lawful, Plaintiff's complaint about that practice was not objectively reasonable and accordingly, not a "protected activity."

In district court cases within the Eleventh Circuit where employees have complained about practices that were not in fact violations of the FLSA, the result has been summary judgment in favor of the employer because the complaint was found not to be a "protected activity."

- In *Garcia*, the employee complained about an employer policy of paying employees for work in cash.  Such a policy is lawful (see 29 C.F.R. § 501.3), just like Euramex's policy of not paying overtime when employees work more than eight hours per day.  The *Garcia* court held that the plaintiff's belief that the employer's practice was unlawful "without more is objectively unreasonable." 2016 U.S. Dist. LEXIS 162540, *31-33.  Because the plaintiff's belief, like Jackson's was "objectively unreasonable," he "failed to establish that he engaged in statutorily protected activity, which necessarily means that he cannot establish a *prima facie* case of retaliation under the FLSA."  *Id.*

- In *Baker v. Supreme Bev. Co.*, 2014 U.S. Dist. LEXIS 172833, *23-25

(N.D. Ala. Dec. 15, 2014), the employee "repeatedly complained about the failure to pay him overtime." However, the employer was not required to pay the employee overtime because he was exempt under the motor carrier exemption. For this reason, the court concluded that the employee failed to engage in a "protected activity" as a matter of law and granted the employer's motion for summary judgment on the plaintiff's FLSA retaliation claim. *Id.*

- In *Snipes v. Northeast Pharms.*, 2013 U.S. Dist. LEXIS 26701, *28-31 (M.D. Ala. Feb. 27, 2013), the employee complained about not being paid for 32 hours of commuting time. Commuting time is not compensable under the FLSA. For this reason, the court held that "[t]he evidence of record is simply not sufficient to permit a reasonable conclusion that a reasonable employer would have understood that plaintiff was asserting a violation of her rights under the FLSA." *Id.* As a result, the court held that "[p]laintiff's complaint . . . is not activity protected by the FLSA's anti-retaliation provision." *Id.* In the absence of protected activity, the court held that the plaintiff could not establish a *prima facie* case of retaliation and granted the employer's motion for summary judgment.

- In *Allen v. Bruister & Assocs.*, 2007 U.S. Dist. LEXIS 51790 (S.D. Ala. July 13, 2007), like here, the plaintiff complained that two of his paychecks were "incorrect" because he had "not been compensated fully" for work he performed. The court held that "[s]uch alleged wrongs may be actionable under

any number of state-law theories, and it is only through wild conjecture and rank speculation that the defendant could possibly conclude . . . that [plaintiff's] claim is predicated on an alleged violation of the FLSA." *Id.*  For that reason, the court granted the employer's motion for summary judgment on the FLSA retaliation claim.

- In *Burnette v. Northside Hosp.*, 342 F. Supp. 2d 1128, 1134-36 (N.D. Ga. 2004), the employee complained about changes to the employer's on-call system.  The change about which the employee complained was that he was request to report to work required to notify his boss about whether he was going to respond to a voluntary after hours work request or not.  The court held that this complaint was not about a policy or practice that violated the FLSA, and therefore that "[the employee's] belief that [the employer's] conduct violated the FLSA was not reasonable [and] his complaint concerning on-call pay was not protected activity."

Finally, Plaintiff's complaint that Riddley was sending him home on Thursday or Friday afternoon and as a result he would not earn overtime is not a "protected activity" because Plaintiff's complaint was about *not* being permitted to work overtime.  Nguyen explained to Jackson that overtime is calculated based on working more than 40 hours per week and that on call time is only paid at time-and-a-half if it is worked in a week in which Jackson works at least 40 hours.  *See*

SOF, ¶ 78.  Nguyen explained that Riddley has the responsibility to track hours and to make sure the property does not incur unnecessary overtime.  *Id.* at ¶ 79. Nguyen told Jackson that it was appropriate for Riddley to send Jackson home so that he did not work more than 40 hours in a week inclusive of on call time.  *Id.* at ¶ 80.

In sum, in response to Defendant's discovery requests and in his deposition, Plaintiff failed to identify any complaint that he made to Euramex that the company was failing to pay him overtime as required by the FLSA.  Nor are there any documents in existence that reflect that Plaintiff made a "protected activity" under the FLSA.  For this reason, Plaintiff has failed to state a *prima facie* case of retaliation under the FLSA.

### b. There is No Sufficient Causal Connection between Plaintiff's Complaints and Euramex's Decision to Terminate His Employment.

Even if the Court concludes that Plaintiff did engage in a "protected activity" under the FLSA, he nevertheless fails to establish a *prima facie* claim of retaliation because he has not alleged a sufficient causal connection between any complaint and Euramex's decision to terminate his employment.  To establish a sufficient causal relation, an employee must "prove that [he] would not have been fired **but for** [his] assertion of FLSA rights."  *Raspanti v. Four Amigos Travel, Inc.*, 266 Fed. Appx. 820, 823 (11th Cir. 2008) (emphasis added).  The Eleventh

Circuit has explained that this "but for" link means that "the discharge is unlawful only if it would not have occurred but for the retaliatory intent." *Reich v. Davis*, 50 F.3d 962, 966 (11th Cir. 1995).  Where "other valid reasons would have led to the same result," there is not sufficient causation.  *Id.*  The Eleventh Circuit held that plaintiffs "are entitled to relief only if they establish that the [protected activity] caused them to suffer adverse action that they otherwise would not have suffered." *Id.*

Jackson fails to establish this "but for" causation because he concedes that there were other reasons for his termination in addition to those asserted by Euramex.  Jackson testified that his "refusing to stop" asking for a raise was one of the reasons for his termination.  *See* SOF, ¶ 74.  Likewise, Jackson believes that Euramex terminated his employment because he corrected Riddley when he believed that Riddley spoke to another employee inappropriately and in a disrespectful way.  *Id.*, ¶ 75.  Accordingly, through his own testimony, Plaintiff has established that even he does not believe that a complaint about any violation of the FLSA was the "but for cause" of his termination.  Plaintiff attributes other reasons wholly unrelated to any complaints about his pay for Euramex's decision to terminate his employment.  Therefore, in addition to the real reasons that Euramex terminated Plaintiff's employment discussed in section c below, Plaintiff

has not met his *prima facie* burden of a causal effect between any "protected activity" and his termination.

### c. Jackson Cannot Demonstrate That Euramex's Reasons for Terminating His Employment Are Pretext For Retaliation.

Even if Plaintiff could establish a *prima facie* case of retaliation (which he cannot), his claim should be dismissed because he cannot show that Euramex's stated reasons for his termination are false and a pretext for unlawful retaliation. Once an employer articulates a legitimate, non-retaliatory reason, the employee must show that the articulated reason for the action is not the real reason *and* that the real reason for the employer's decision was because Plaintiff complained about a failure to pay overtime. *See Wolf*, 200 F.3d at 1342-43.

Here, Euramex has articulated legitimate, non-retaliatory reasons for its decision to terminate Plaintiff's employment: Plaintiff's failure to provide satisfactory customer service and his unprofessional behavior towards residents, co-workers and supervisors. *See* SOF, ¶ 67. These are clearly legitimate, non-retaliatory reasons for Euramex's decision. *See, e.g. Fairchild v. All Am. Check Cashing, Inc.*, 815 F.3d 959, 967 (5th Cir. 2016) (holding that poor customer service is a legitimate reason for termination); *Adamson v. Walgreens Co.*, 750 F.3d 73, 79 (1st Cir. 2014) (holding that inadequate customer service is a legitimate reason for termination); *Brown v. Pulaski County Bd. of Educ.*, 263 Fed. Appx. 842, 843 (11th Cir. 2008) (holding that employer met its burden of

providing legitimate reason for termination by showing plaintiff was unprofessional in her interactions with other employees). Plaintiff has not offered any evidence to demonstrate that these stated reasons are not the real reasons for Euramex's decision to terminate Plaintiff's employment and that the real reason was because of any complaint about failure to pay overtime. For this reason, even if Plaintiff could establish a *prima facie* case of retaliation (which he cannot), summary judgment on Plaintiff's retaliation claim is warranted.

The actual reasons for Euramex's decision to terminate Plaintiff's employment are based on the following employment history:

- Soon after Euramex gave Plaintiff a pay raise in February 2015, Plaintiff's attitude changed and his customer service towards the Wesley Trevento residents and his co-employees suffered. *See* SOF, ¶ 23.

- Euramex received a series of complaints from residents about Jackson's attitude and behavior. *Id.* at ¶ 24. Residents complained about Jackson acting disrespectfully to the point where residents were refusing Jackson entry into their apartments. *Id.* at ¶ 25.

- Over a period of several months in 2015, Jackson became defiant about his job duties and exhibited unprofessional behavior. He was also slow to respond to emergency pages. He yelled profanity at residents and was disrespectful to Riddley and to other co-workers. *Id.* at ¶ 26.

- Jackson became increasingly aggressive and angry about complaints received by management from residents and would react by confronting the residents, creating an uncomfortable working environment. *Id.* at ¶ 27.

- Euramex repeatedly counseled Jackson on his attitude, customer service and complaints received from residents. *Id.* at ¶ 28. Jamin Harkness

(Euramex's former Executive Vice-President) counseled Jackson that he needed to improve on the way he communicated with residents. *Id.* at ¶ 29.

Euramex presented Plaintiff with documents showing resident complaints about him. *Id.* at ¶ 30. Those complaints included:

- A July 6, 2015 complaint from resident Davis Gernisha complaining about Plaintiff's lack of responsiveness to her call about a broken air conditioner and Plaintiff's "rude" comments. *Id.* at ¶¶ 31-32.

- An incident wherein Jackson refused to address an issue not listed on a work order with a resident. *Id.* at ¶ 36.

- A September 1, 2015 complaint from resident Katrina Wilson complaining about Plaintiff's lack of responsiveness to her call about her leaking hot water heater, Jackson's expression of disagreement with the resident over whether the incident constituted an "emergency," Jackson's complaining about his commute to work, and threatening the resident with "questions from management" about the call. *Id.* at ¶¶ 38-39.

- On September 22, 2015, management received a handwritten letter from Amanda Chaplin, a Leasing Agent at the property. *Id.* at ¶ 41. In the letter, Chaplin noted resident complaints about Jackson, including requests that Jackson not enter their apartments. *Id.* at ¶ 42. Chaplin also reported comments Jackson made to a resident criticizing Chaplin's work performance. *Id.*

- An October 10, 2015 incident when Jackson was slow to respond to a call about a leak in an apartment while on call. *Id.* at ¶ 46.

- An October 28, 2015 complaint from resident Leela Ramlal stating that Jackson was not allowed to return to her apartment because he "is a very rude and disrespectful person." *Id.* at ¶¶ 49-50.

- A November 5, 2015 complaint from resident Lori Lucas complaining that when Jackson came to fix her toilet, he complained about his

commute and threatened Lucas with a fine if the toilet were to flush. *Id.* at ¶¶ 51-52.

In addition to resident complaints, Jackson's fellow employees experienced Jackson's failure to provide satisfactory customer service and his unprofessional behavior.

- In an August 26, 2015 memo, Riddley noted an incident where Jackson was asked by a co-worker to complete a work order and Jackson responded negatively with comments such as "that's not my job" and "Get with the Maintenance Supervisor." *Id.* at ¶¶ 33, 35.

- In the September 22, 2015 letter from Chaplin, Chaplin stated that while in the leasing office, Jackson "started ranting" and called Chaplin "a little girl" while yelling. *Id.* at ¶ 42. Chaplin notes that she thought Jackson's behavior was "very disrespectful and unprofessional." *Id.*

- On Friday November 27, 2015, Jackson came into Riddley's office and tossed a toilet handle on her desk. *Id.* at ¶ 57. Jackson told Riddley that a resident that needed a new toilet handle would have to wait until Monday to use the bathroom to give him time to place an order for a new handle because he refused to go to Home Depot. *Id.* When Riddley told Jackson that was "obviously ridiculous," Jackson told Riddley that she needed to go get the handle. *Id.* at ¶ 58. Acknowledging that Riddley's request was legitimate, Jackson refused to go to the store to buy the handle. *Id.* at ¶ 59. Riddley instructed Jackson to complete the task and that she would take it as insubordination if he continued to refuse. *Id.* at ¶ 60. Riddley asked Jackson whether he was refusing to do his job, to which Jackson responded "Yes." *Id.* at ¶ 61.

- On December 19, 2015, Jackson put his hand on Chaplin's face and put his finger on her temple, touching and pointing at her. *Id.* at ¶ 64. Chaplin complained to Nguyen that she believed Jackson was "rude towards her and makes remarks towards her." *Id.* at ¶ 65.

These complaints and incidents led to numerous verbal and written counseling sessions, none of which resulted in a change in Plaintiff's behavior.

- On August 26, 2015, Riddley handed Jackson a memo titled "Concerns and Expectations." *Id.* at ¶ 33. The memo "set forth goals to address concerns and expectations regarding [Jackon's] job performance." *Id.* at ¶ 34. The concerns noted in the memo were "lack of good manners and positive attitude when interacting with residents, numerous displays of anger in interactions with residents, and creating an uncomfortable work environment." *Id.* The memo noted that if Jackson were unable to keep his commitments and consistently improve his performance, further coaching or counseling up to and including termination would be necessary." *Id.* at ¶ 37.

- On September 8, 2015, Riddley, Nguyen and McKay met with Jackson to address a list of complaints residents had made about Jackson. *Id.* at ¶ 40. The management team asked Jackson to work on his customer service skills. *Id.*

- On September 23, 2015, Harkness had a one-on-one meeting with Jackson and asked him to address his behavior with residents and co-workers. *Id.* at ¶ 43. Harkness asked Jackson to "hit the reset button," and to try to do well with customer service two weeks at a time. *Id.*

- On October 13, 2015, Riddley handed Jackson a second memo titled "Concerns and Expectations." *Id.* at ¶ 44. The memo "set forth goals to address concerns and expectations regarding your recent job performance." *Id.* at ¶ 45. The memo instructed Jackson that he was required to address emergency calls by contacting the resident within 15 minutes by phone and to arrive at the property within an hour of the call. *Id.* at ¶ 47. The memo notes that if Jackson is unable to keep his commitments and consistently improve his job performance, further coaching or counseling up to and including termination would be necessary. *Id.* at ¶ 48.

- On November 24, 2015, Nguyen, Harkness, Riddley and McKay met with Jackson to discuss his behavior and communication with residents. *Id.* at ¶ 53. The management team told Jackson that he "needed to tighten up." *Id.* at ¶ 54. They went over additional resident complaints with him, concerns about Jackson's behavior and communications with co-workers and management. *Id.* They told Jackson that they had not seen improvement from him even though they had given him many

chances.  *Id.*  They informed Jackson that they were moving forward with running an advertisement for his position, but still expected his behavior and communications to improve.  *Id.*

As Riddley told Harkness in a November 30, 2015 email, Euramex "provided Jake [Jackson] many opportunities to correct his attitude."  *Id.* at ¶¶ 55, 62.  By the end of November 2015, Euramex had decided that it could not "continue with sweeping it [Jackson's failure to correct his behavior] under the rug any longer."  *Id.*  Jackson cemented Euramex's view when days before his termination, he intentionally cut up his maintenance keys so that Euramex could not use them after his termination.  *Id.* at ¶ 66.

Because Euramex has articulated legitimate, non-retaliatory reasons for terminating Jackson's employment, the burden rests with Plaintiff to show that these articulated reasons are not the real reasons *and* that the real reason for his termination was the fact he complained about an unlawful practice under the FLSA.  There is no evidence in the record demonstrating that these legitimate, non-retaliatory reasons for Euramex's termination decision are pretextual.  Euramex was up front with Plaintiff about the need for him to improve his customer service and behavior towards residents, co-workers and supervisors.  Despite repeated warnings and counseling sessions, Plaintiff refused to correct his behavior and by December 2015, could no longer tolerate Plaintiff's failure to improve.  It is immaterial to this Motion whether Jackson agrees with the veracity of the resident

or employee complaints made against him, or whether the counseling that Euramex issued to him was justified.  The only material fact is that Euramex believed the complaints and in good faith terminated Plaintiff's employment because of his failure to improve customer service and his behavior towards residents and co-workers.

For all these reasons, should the Court conclude that Plaintiff established a *prima facie* case of FLSA retaliation, the undisputed factual record in this case establishes that Euramex has proffered legitimate, non-retaliatory reasons for discharging Jackson and Plaintiff has not presented any probative evidence that these stated reasons are pretextual and that the real reason was in retaliation for activity protected by the FLSA.

## III.   CONCLUSION

For all of these reasons, Euramex is entitled to summary judgment as a matter of law on Plaintiff's claims of FLSA retaliation in his Complaint.  Euramex respectfully requests entry of an order dismissing Plaintiff's retaliation claims with prejudice, and any other relief this Court deems just and proper.

Respectfully submitted this 20th day of April, 2017.

*/s/ Eric Magnus*
Eric R. Magnus
Georgia Bar No. 801405
JACKSON LEWIS, P.C.
1155 Peachtree St., NE, Suite 1000
Atlanta, Georgia 30309

Phone: (404) 525-8200
Fax: (404) 525-1173
E-mail: magnuse@jacksonlewis.com

COUNSEL        FOR        DEFENDANT
EURAMEX    MANAGEMENT    GROUP,
LLC

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |  |
|---|---|---|
| **ROBERT JACKSON, on his own behalf and others similarly situated,** | : | |
| | : | |
| **Plaintiff,** | : | **Civil Action File No.** |
| | : | **1:16-cv-01692-SCJ** |
| **v.** | : | |
| | : | |
| **EURAMEX MANAGEMENT GROUP, LLC,** | : | |
| | : | |
| **Defendant.** | : | |
| _____ | : | |

## <u>CERTIFICATE OF SERVICE</u>

I certify that on April 20, 2017, I electronically filed the foregoing

**DEFENDANT EURAMEX MANAGEMENT GROUP, LLC'S PARTIAL**

**MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S**

**RETALIATION CLAIM AND MEMORANDUM OF LAW IN SUPPORT**

with the Clerk of the Court using the CM/ECF system which will automatically

send email notification of such filing to the following attorneys of record:

Larry A. Pankey
Pankey & Horlock, LLC
1441 Dunwoody Village Parkway, Suite 200
Atlanta, Georgia 30338-4122

*/s/ Eric Magnus*
Eric R. Magnus
Georgia Bar. No. 801405

4823-6772-5381, v. 1

24